**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION FOR A WARRANT AUTHORIZING THE INSTALLATION AND MONITORING OF TRACKING DEVICES IN OR ON A GRAY 2016 LAND ROVER, NH REG. 446 4612, REGISTERED TO KERMIT CEASAR | Case No. 21-mj-__107-01-AJ_____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Task Force Officer (TFO) Michael McGee, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1.      I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.  I also am a "federal law enforcement officer" within the meaning of Rule 41 of the Federal Rules of Criminal Procedure.

2.      I make this affidavit, pursuant to Federal Rule of Criminal Procedure 41, and Title 18, United States Code, Section 3117, in support of an application for a search warrant authorizing the installation and use of a tracking device, for a forty-five (45) day period, on a 2016 gray Land Rover, New Hampshire Registration 446 4142, registered to Kermit Ceasar ("Target Vehicle").  I believe that the Target Vehicle is used by Kermit Ceasar in and around Manchester, New Hampshire to conduct drug transactions.

3.      I am employed as a police officer with the Manchester, New Hampshire Police Department and have been so since July 2014.  I am currently assigned to the Federal Bureau of

1

Investigation's (FBI) New Hampshire Safe Streets Gang Task Force, which works to dismantle

and disrupt criminal organizations and streets gangs in and around the state of New Hampshire. I

have been assigned to this task force since March of 2021. Prior to joining the task force, I was

assigned to Manchester Police Department's Anti-Crime Unit where I focused on the deterrence

and apprehension of violent offenders with a special emphasis on criminal street gangs. I was

assigned to the Anti-Crime Unit between November 2021 and March 2021.  Prior to joining the

Anti-Crime Unit, I was assigned to the Gang Prevention Unit where I strictly focused on criminal

street gangs within the Manchester. My duties within the Gang Prevention Unit consisted of

apprehension, deterrence, and intervention of individuals associated with criminal street gangs. I

was assigned to the Gang Prevention Unit in June 2017.

4.       During my employment as a police officer, I have successfully completed the

Manchester Police In-House Academy as well as the New Hampshire Police Standards and

Training Council Academy located in Concord, New Hampshire.  I have received specialized

investigatory training in numerous areas to include, gang investigations, drug investigations,

criminal interdiction, and I am a certified Professional Gang Investigator by the East Coast Gang

Investigators Association.  I have responded to, investigated, or participated in the investigation

of many crimes to include homicides, aggravated assaults, robberies, burglaries, thefts, and drug

related crimes.  I have a Bachelor of Arts in Criminal Justice from Saint Anselm College in

Manchester, New Hampshire.  In my current assignment I have tracked, interviewed,

investigated, and otherwise spoken with several persons involved with gangs, violent crimes, and

drug trafficking.

5.       Based upon my training, experience, and involvement in prior investigations, I

know that individuals who distribute narcotics often use motor vehicles to obtain quantities of

controlled substances from their source of supply for distribution.[1]  I also know that individuals

who are engaged in the distribution of controlled substances use motor vehicles to transport

controlled substances to various locations to meet with and distribute controlled substances to

prospective purchasers. They also use motor vehicles to transport drug proceeds. Because

individuals who are involved in the distribution of controlled substances are highly cognizant of

the presence of law enforcement, and often engage in counter-surveillance maneuvers while

traveling in a motor vehicle, it is frequently difficult for law enforcement to effectively conduct

surveillance. The presence of a tracking device on a motor vehicle engaged in drug-related

activity is beneficial because it allows law enforcement to track the movement of the vehicle

effectively, while decreasing the chance of detection.

6.      In preparing this affidavit, I have written reports and reviewed reports prepared by

other investigators.  In addition, I have discussed this investigation with other officers involved

in the matter.  Through my conversations with other officers and my analysis of reports prepared

by other officers, I am familiar with all aspects of this investigation.  The information contained

in this affidavit is submitted for the sole purpose of supplying probable cause for the issuance of

an order authorizing the government at any hour of the day or night to install, monitor, maintain,

and remove a mobile tracking device, which transmits an electronic signal that can be used to

detect the movement and location of the above described Target Vehicle, and make surreptitious

entry into the vehicle at any hour of the day or night to install the mobile tracking device,

maintain the mobile tracking device, or remove the mobile tracking device. While this affidavit

---

[1]      Observations made and conclusions drawn throughout this affidavit that are based on my training and experience also include the training and experience of other law enforcement agents and officers with whom I have discussed these issues.

contains all the material information I am aware of that is pertinent to the requested search warrant, it does not set forth all of my knowledge about this investigation.

7.      Based on the facts set forth in this affidavit, there is probable cause to believe, and I do believe, that a violation of Title 21, United States Code, Section 841(a)(1) has been committed and will be committed by Kermit Ceasar. There is also probable cause to believe, and I do believe, that Kermit Ceasar uses the Target Vehicle in furtherance of his drug-trafficking activities. Accordingly, I believe that the installation of a tracking device on the Target Vehicle and the use of the tracking device for a forty-five (45) day period will lead to evidence, fruits, and instrumentalities of the aforementioned crime.

## PROBABLE CAUSE

8.      On April 22, 2021, two Manchester Police Department detectives met with a confidential informant who advised that he/she has known Ceasar for several years and has purchased crack cocaine from him throughout that time.[2]

9.      Based on the information provided by the confidential informant about Ceasar, the Manchester Police Department decided immediately to arrange for the informant to make a controlled purchase of crack cocaine from Ceasar.

10.     At approximately 9:00 a.m. on April 22, 2021, the two detectives searched the confidential informant for contraband and United States currency with negative results.  The detectives then provided the informant with a recording device.

---

[2]      The confidential informant is cooperating with law enforcement in an effort to seek consideration on charges related to multiple controlled purchases of drugs.  The informant has a criminal record for prior drug cases. As demonstrated in this affidavit, I have credited the informant's statements about Ceasar based on his ability to complete a successful controlled purchase from Ceasar for a significant amount of crack cocaine in a manner that was consistent with the informant having had a long-term relationship with Ceasar.

11.     At the detectives' direction, at approximately 9:26 a.m., the confidential informant used Facebook messenger to place a call to Ceasar.  Ceasar asked the informant how much he wanted and where they should meet.  The informant responded "3" by which he intended to order 3 ounces of crack cocaine.  The informant was already aware that Ceasar charged $1,600 per ounce of crack cocaine so there was no specific discussion of price.  After the call, the Manchester detectives gave the informant $4,800 in recorded US currency to make the purchase.

12.     At approximately, 9:47 a.m., Ceasar drove the Target Vehicle behind the informant's residence.  When Ceasar arrived, the confidential informant left his residence and walked to the driver's side of the Target Vehicle.  Ceasar and the informant met at the Target Vehicle for a couple of minutes before the informant returned to the residence.  After the interaction with the informant, Ceasar drove off.  The interaction was video recorded.

13.     On returning to the residence, the confidential informant provided one of the detectives with the recording device and two bags of a white chunk substance that the detective recognized from his training and experience to be consistent with the appearance of crack cocaine.  A field test later conducted on the substance returned a positive result for the presence of cocaine.  The substance weighed approximately 87 grams.

14.     After the confidential informant turned over the drugs, he explained that Ceasar was the only occupant of the Target Vehicle and that, after a bit of small talk, the informant handed Ceasar the $4,800, and Ceasar gave the informant the two bags of crack cocaine.  Ceasar commented that the product was a "little dry" before they parted.

15.     During the period leading up to the interaction between the confidential informant and Ceasar, Manchester police conducted surveillance of Ceasar.  Shortly after the informant and Ceasar spoke, an officer observed Ceasar leave his address at                              in Manchester and

5

walked down an alley to the Target Vehicle. Ceasar was then surveilled driving directly to the deal with the confidential informant.

## AUTHORIZATION REQUEST FOR THE INSTALLATION AND MONITORING OF THE TRACKING DEVICE

16.     I make this affidavit in support of an application for a search warrant authorizing the installation and use of a tracking device for a forty-five (45) day period, in or on the Target Vehicle. In addition, because individuals who are involved in the distribution of controlled substances are keenly aware of the presence of law enforcement, I believe that if law enforcement officers were required to place the tracking device on the motor vehicle during the hours of 6:00 A.M. and 10:00 P.M., the target of the investigation would likely observe the activity of law enforcement. Therefore, because there is reasonable cause to believe that the installation of the tracking device during the daytime hours of 6:00 A.M. – 10:00 P.M. would result in the target's discovery of the presence of law enforcement actions, it is hereby requested that the Court allow for law enforcement to install the tracking device at any time in the day or night.

17.     In the event the Court grants this application, there will be periodic monitoring of the tracking devices during both daytime and nighttime hours for a period of forty-five (45) days following installation of the devices. Because Ceasar may sometimes park the Target Vehicle on private property, it may be necessary to enter onto private property and/or move the Target Vehicle in order to effect the installation, repair, replacement, and removal of the tracking device. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## CONCLUSION

18.     Based upon the facts set forth above, I respectfully request that the Court issue warrants authorizing members of the FBI or their authorized representatives, including but not

6

limited to other law enforcement agents and technicians assisting in the above-described

investigation, to install a mobile tracking device in or on the Target Vehicle within the District of

New Hampshire within ten (10) calendar days of the issuance of the requested warrant, and to

remove said tracking devices from the Target Vehicle after the use of the tracking device has

ended.  I further request authorization to move the Target Vehicle to effect the installation,

repair, replacement, and removal of the tracking device and to monitor the tracking device for a

period of forty-five (45) days following the installation of the devices, including when the

tracking devices are inside private garages and other locations not open to the public or visual

surveillance, both within and outside the District of New Hampshire.

I declare that the foregoing is true and correct.


/s/ Michael McGee_____
Michael McGee
TASK FORCE OFFICER
FBI

The affiant appeared before me by telephonic conference on this 27th day of April, 2021
pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and
application

/s/ Andrea K. Johnstone
HON. ANDREA K. JOHNSTONE
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF NEW HAMPSHIRE

7